For argument, 25-1063, once again, Amsted Rail v. Squires. So there are a few less issues on this one. Yes, that's correct, Your Honor. So with this appeal, I'm going to start and concentrate on the Board's decision with regard to Claims 25 and 28. These claims require, respectively, software filters and digital filters. Amsted argued below that the reference, the only reference that actually discloses filtering only discloses analog filtering in connection with the preconditioning of signals for analog-digital conversion. The Board agreed with that characterization, yet the Board found these claims obvious by adopting a theory that the petitioner never advanced and was never argued by the parties, which is that the Brown's analog filtering, again in relation to preconditioning of an analog signal for conversion to a digital signal, could be implemented in Armitage's firmware as a digital filter. So Amsted had no notice of this particular argument, had no opportunity to develop the record as to why a person of ordinary skill would not use the disclosure of analog filtering in relation to preconditioning to implement it in a digital environment, in the digital domain already. There's no reason to do that because the whole point of the disclosure in Barone is to prepare an analog signal for digital conversion. My understanding of the Board's decision and the Board's reading of the petition is that the petitioner was relying on Barone for the kind of broader conceptual teaching that it's good to filter out unwanted data. There's an advantage to parsing that out and then focusing on the desired data. And then when you do that in Armitage's sensing system with Armitage's firmware, well, you would do that kind of filtering in a software form. And that Mr. Ricca, Dr. Ricca, the expert, said all these different forms of filtering, mechanical, electronic, software, are all super well-known and have been super well-known for decades. So therefore, it's just once you decide you want to do filtering in Armitage, you just plug and play in Armitage's environment, which would lead you to a digital software filter. I guess the point is that you would not be looking to Barone to do that. Barone doesn't discuss digital filtering at all, filtering in the digital domain at all. And the only filtering that's disclosed, at least decided, is, again, signal preconditioning. My understanding is that the point is that we're not looking at Barone's teaching of an analog filter. We're just picking up Barone as evidence that, yes, it was very, very well-known in the art that when you get a bunch of data, it's good to filter some of that data because you can excise the unwanted data. And then you can do that in other environments where you're sensing trained safety data, and that would be Armitage. And so once you apply that concept to Armitage, where would that lead you? That would funnel you right into Armitage's firmware, which would lead you to a software form of the filter. So, again, that certainly wasn't how I read the petition to be arguing. The petitioner and the petitioner's expert continually stated Barone discloses a digital filter. They said that in relation to Claim 1. They said that in relation to Claim 25 and 28 was a reference. But in any case, that's the point, is that the argument that was raised in the petition is that Barone discloses a digital filter that you could implement in Armitage's firmware. And it doesn't. There is no disclosure of a digital filter in Armitage. And in fact, one of the pieces of evidence actually states in relation to signal preconditioning prior to analog-digital conversion that those types of filters always must be in the analog domain. Because the reason why is that you end up, if you encode into the digital domain without conducting that filtering, you get a signal that has a lot of artifacts in it. It must be in the analog domain. And so it's not clear to us if there was any explanation for why a person of ordinary skill would look at Barone, the reference that was selected, to arrive at generic filtering in Armitage's firmware, which Armitage doesn't disclose filtering at all. That's a different issue. But after Amstead brought this up in the patent owner response, the petitioner doubled down, saying that Barone is not limited to analog and that it teaches the filtering of digital signals. It actually cited additional evidence that was not considered by the board because it was not part of the petition. What if we conclude that there's substantial evidence that Armitage discloses filtering, unwanted data? I would challenge that. Amstead's view of what Armitage discloses is more of a sampling technique. At the time of data collection, it only collects data from particular axes of the accelerometer, for example. As our expert discussed below, that is more akin to a sampling technique as opposed to filtering. That would be our argument for why Armitage does not disclose filtering. Again, that's at the point of data collection. I'd like to also briefly touch on the implicit construction of one or more filters. In Amstead's view, the claim tax specification and prosecution history indicate that the filtering which is recited in the claim occurs after the accelerations are sensed. That's based on reading of the claim, antecedent basis, various disclosures in the specification. To weigh in on that argument, do we have to agree with you that Claim 26 is plagued by a drafting error? I don't think so. I'll just refer to the line from... I don't have the case site in front of me, but if the specification is clear, the claim differentiation can't wag the dog. Don't mechanical filters have to be within the scope of the independent claim if they're in Claim 26 and 26 is not an error? That would be the application of the claim differentiation document. What you're saying is no, because claim differentiation doesn't mean that? I'm saying that the clear disclosure in the specification would trump that. We go through the history of the claims and the prosecution that the specification was very clear on the distinction between mechanical filtering and the filtering, which is the core of the invention. So in your view, Claim 26 is invalid? Very likely, yes. Did you cancel it? We did not. We did not. You can't prove it? No. Good morning, Your Honors, and may it please the Court. Shelley Wayne for the Director of the USPTO. I'll begin by addressing the issue of Claims 25 and 28. The Board's reading of the petition was correct. The Board did find that Barone's signal conditioning is analog, but then it read the petition to propose implementing the filtering of Barone in the firmware that is indisputably found in Armitage. And you can look at the petition at Appendix 265 to 268, and then again at Appendix 276 to 277. The Board's reading of the petition is the correct one. The petition makes clear that it's arguing that Barone discloses both analog and digital filtering. And when the petition discusses the dependent claims with the digital filtering limitations, it refers back to that general idea discussed in reference with Claim 1, which is that a personal skill in the art would have been motivated to combine filtering, as taught in Barone, with the Armitage reference, to the extent Armitage can be read to not contain a filtering disclosure at all. So the evidence cited in the petition is the same evidence that appears in the Board's decision at Appendix 37 to 38. The Board relies on the testimony of petitioner's expert and then cites back to teachings in the prior art that a person of skill in the art would have known that there are times when you can implement filtering in analog and times you can implement filtering in digital domains. So yes, the Board found that Barone's signal conditioning is analog, but the petition was based on the broader concept of combining Barone's filtering. I'll turn next to, unless the court has questions on this issue, I'll turn next to Claim 26 and, Judge Stark, you're absolutely correct. There's no universe in which Claim 1 and Claim 26 can both exist. Claim 26 further limits Claim 1 and says wherein the one or more filters are a mechanical filter and that just disposes of their claim construction argument to the extent counsel was suggesting that the specification controls. Well, there we have the preferred embodiment, which teaches mechanical filtering. So it could not be more clear that the independent claims, when they're talking about one or more filters, they're talking about mechanical as well as digital. It seems like your friend's only answer to that is kind of, and I think he may be characterizing some of our cases correctly, like we not rested on claim construction that frequently, sometimes saying it's kind of like the tail wagging the dog. So is your response to that? And I understand your question to mean we're not resting on claim differentiation. And that's the correct characterization of the case law from this court. But again, in this case, you have the specification at column 5 and at figure 4. This is at appendix 113 and appendix 100, talking about the preferred embodiment that talks about mechanical filters that are used for filtering accelerations that are considered noise. So the claim construction argument, whether you look at claim differentiation or just the specification or both, the intrinsic evidence supports that one or more filters configured to filter at least a portion of accelerations is broader than just digital filters or mechanical filters. What about dependent claim 3? So that's an interesting one, Your Honor. I think I didn't see your green brief mention dependent claim 3. I can answer that question now, Your Honor. I think dependent claims Are you going to walk back with the board said about dependent claim 3? I'm not sure which The board seemed to rely on dependent claim 3 along with dependent claims 23 and 26 as evidence for why claim 1 should be understood to include mechanical filters upstream of the sensor. But of course, when you look at claim 3, it calls for additional filtering to be added to claim 1. And that additional filtering is, in fact, mechanical filters upstream. Correct, Your Honor. And I think it's a fair reading of claim 3 that if we're going to look at the dependent claims, claim 26 maps on more clearly. Like the argument for claim constriction or claim differentiation, I'm sorry, is stronger with claim 26. With claim 3, and I'll pull it up so that I'm not just speaking from memory. With claim 3, it's talking about it's limiting claim 1 further and it's talking about a wireless sensor node and then saying that there's a mechanical filter in the wireless sensor node. Claim 1 isn't talking about a wireless sensor node in that way. So I think if you were to look at the support from the dependent claims, claim 26 and claim 23 are stronger evidence of what the one or more filters term means in claim 1 than claim 3. But even with claim 3, it's sort of introducing further limitations before it's discussing filtering or mechanical filtering. So that would be my response to that. And then just briefly, Your Honor, as to if you agree, you were asking the prison counsel if you agree that Armitage discloses filtering. The petition ground was Armitage in combination with Barone. This was sort of a belts and suspender approach from petitioner. They talk about Armitage disclosing filtering and then saying to the extent Armitage does not disclose filtering, you have Barone and there's a motivation to confine the two. Okay, unless the court has further questions, I yield my time. Thank you, Your Honor. I will just very briefly address the claim 3 issue and the issue of the preferred embodiment that my colleague just mentioned. So one thing to note is that claim 3 was originally filed in the PCT application as claim 49. Claim 26 was added much later. So when we say that the original description supports our reading, one of the things we're referring to is claim 3. That is part of the original specification as it was filed. Additionally, it's just simply not true that the preferred embodiment must include a mechanical filter. The wireless sensor node in figure 5 is expressly disclosed as not having a mechanical filter and that embodiment is no less preferred. And a logical reading of the claims is that what is covered by claim 1 would be the WSN of figure 5 and what would be covered by claim 3 would be the WSN of claim 4, which expressly states that it has an optional mechanical filter in it. So the idea that a mechanical filter must be included for being in the preferred embodiment just simply isn't supported by the specification. Thank you.